STATE OF NORTH CAROLINA v. VANDORANCE TROLLA McQUEEN

No. 7821SC598

(Filed 5 December 1978)

**Criminal Law § 48— defendant's silence at time of arrest—questions not impeaching—no error**

    The trial court did not err in allowing the district attorney to question defendant concerning his failure to make a statement at the time of his arrest and after he had been warned of his constitutional right to silence, since the district attorney's questions did not serve his apparent purpose of impeachment, but the questions and defendant's answers instead tended to corroborate defendant's testimony at trial concerning his whereabouts and activities at the time of the commission of the crime charged, and this was neither erroneous nor harmful to defendant.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 29 March 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals sitting in Winston-Salem 14 November 1978.

The defendant, Vandorance Trolla McQueen, was indicted for armed robbery and entered a plea of not guilty. The jury returned a verdict of guilty as charged. From judgment sentencing him to imprisonment for a term of forty years, the defendant appealed.

The State's evidence consisted of the testimony of W. K. Patterson, the arresting officer. Patterson testified that he arrested one Larry Richardson in connection with an investigation of an armed robbery occurring in Arby's Roast Beef Restaurant on 28 December 1977. Richardson voluntarily made a statement to Patterson indicating that he and the defendant had gone for a ride in Richardson's car on 28 December 1977 and had stopped on Knollwood Street near the Little General Store. The defendant got out there and left the car, but Richardson could not see where

State v. McQueen

he went. The defendant soon returned to the car and told Richardson to "pull off easy." The defendant then pulled out a pistol and laid it on the seat of the car. They then returned to the defendant's house, where the defendant pulled out a lot of money and threw it on the bed saying, "I have got me some money now." The defendant gave Richardson approximately fifty dollars of the money and said, "Don't say anything about this to anyone."

The defendant's evidence consisted solely of his own testimony. He testified that he had been employed at Arby's Roast Beef on Knollwood Street for seven months during 1971. Richardson had come by his house on the day in question, but he never went riding with Richardson and had nothing to do with the armed robbery.

*Attorney General Edmisten, by Assistant Attorney General Rudolph A. Ashton III and Associate Attorney John R. Wallace, for the State.*

*Billy D. Friende for the defendant appellant.*

MITCHELL, Judge.

The defendant's sole assignment of error is that the trial court erred in allowing the district attorney to question him concerning his failure to make a statement at the time of his arrest and after he had been warned of his consitutional right to silence. During the cross-examination of the defendant by the district attorney, the following exchange took place:

Q. And when you were arrested, you were advised of your Miranda rights, were you not?

A. Yes.

Q. And chose to make no statement?

A. Did I make a statement?

Q. Um-Hum.

A. Hun-uh.

Q. Why not?

MR. FRIENDE: Objection, Your Honor.

MR. COLE: He opened the door.

THE COURT: Overruled.

A. Because I hadn't did anything. He asked me to confess
and I said, "Confess to what?" and he said, "Armed Rob-
bery."

Q. You didn't make a statement to anything?

A. I told him I was at home with the flu that day. That is
what I told Officer Patterson.

Q. Were you at home with the flu?

A. Yes, I was. I had stayed out of work.

When the defendant was arrested, he was advised of his
Miranda rights. Although those rights contain no express
assurance that a defendant's silence will not be used against him,
such assurance is implied therein. Therefore, "[I]t would be fun-
damentally unfair and a deprivation of due process to allow the
arrested person's silence to be used to impeach an explanation
subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618, 49
L.Ed. 2d 91, 98, 96 S.Ct. 2240, 2245 (1976).

The defendant's testimony that he stayed at home on the day
of the armed robbery constituted an exculpatory statement in the
form of an alibi. The district attorney sought to impeach the
defendant's statement by showing that he did not give the same
statement at the time he was arrested but, instead, chose to re-
main silent. Had the district attorney been successful in his at-
tempt to use the defendant's silence at the time of his arrest, and
after receiving the *Miranda* warnings, for purposes of impeaching
the exculpatory statement rather than for purposes of challenging
the defendant's testimony as to the content of his statement, the
defendant's rights under the Due Process Clause of the Four-
teenth Amendment to the Constitution of the United States
would have been violated. *Doyle v. Ohio*, 426 U.S. 610, 619, 49
L.Ed. 2d 91, 98, 96 S.Ct. 2240, 2245 & n. 11 (1976). Such error
would require reversal "unless the appellate court finds that it
was harmless beyond a reasonable doubt." G.S. 15A-1443(b); *Chap-
man v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967).

In the present case, however, the district attorney's efforts
to impeach by presenting evidence of the defendant's "prior

silence" was manifestly unsuccessul. Although the defendant's original answer of "hun-uh" must be taken as an indication that he exercised his right to remain silent after being advised of his Miranda rights, he immediately thereafter testified that he had in fact made a statement and recited the contents of that statement. The defendant's testimony clearly indicated that he made a statement to the officer concerning his presence on the date of the armed robbery which in no way differed from his testimony at trial on that subject. The district attorney's questions did not, therefore, serve his apparent purposes of impeachment. Instead, the questions and the defendant's answers tended to corroborate the defendant's testimony at trial concerning his whereabouts and activities at the time of the commission of the crime charged. This was neither erroneous nor harmful to the defendant.

The defendant having received a fair trial free from prejudicial error, we find

No error.

Judges CLARK and WEBB concur.